**SIGNED this 23 day of July, 2026.**



_____
**John T. Laney, III**
**United States Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## COLUMBUS DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **MARK ARDEN CASTO,** | ) | **CHAPTER 13 BANKRUPTCY** |
| | ) | |
| Debtor. | ) | **CASE NO. 19-40800-JTL** |
| | ) | |
| | ) | |
| **ESTATE OF TIM T. ROVIG,** | ) | |
| | ) | **CONTESTED MATTER** |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **MARK ARDEN CASTO and** | ) | |
| **JONATHAN W. DELOACH, TRUSTEE** | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM OPINION ON THE MOVANT'S MOTION FOR ADDITIONAL
COURT DIRECTION THAT CASE REMAIN OPEN FOR ADDITIONAL
TIME TO ACCOMMODATE TRIAL SETTING REQUESTED**

1

The above-styled matter came before the Court on a Motion for Additional Court Direction that Case Remain Open for Additional Time to Accommodate Trial Setting filed by the Movant, the Estate of Tim Rovig. The Debtor, Mark Castro opposed the motion. The Trustee, Mr. Deloach represented by Mr. Mike Jones, did not respond to the motion but did present arguments during the hearing. The Court finds that § 1329(c) would not allow a modification of the Debtor's plan to administer the unmatured asset were it to become part of the estate. Therefore, the Court finds that closure of the Debtor's case is appropriate.

## I.      FACTUAL FINDINGS AND PROCEDURE POSTURE

The facts of this case are quite complicated. Since the facts are generally uncontested by the parties, the Court's recitation will be relatively brief.

The Movant was injured using an allegedly defective tree stand on December 7, 2015. Mem. in Supp., Doc. 131 at 2. The Movant hired the Debtor as his lawyer to represent him in a products liability case against both the manufacturer and seller of the tree stand. *Id*. The Debtor filed the case on December 8, 2017, after the statute of limitations had passed. The manufacturer and seller of the tree stand moved to dismiss the case, and the Debtor filed a voluntary dismissal of the case. *Id*. at 3. The Movant states that "no later than December 8, 2018," the Debtor knew that the Movant had a professional liability claim against him. *Id*.

The Debtor filed this Chapter 13 bankruptcy case on September 13, 2019. Chapter 13 Vol. Pet, Doc.1. The Debtor failed to include the Movant as a creditor and did not provide the Movant notice of the case. *Id*. On February 19, 2020, the Debtor's plan was confirmed. Order Confirming Plan, Doc. 30. It provided for the Debtor to make 57 payments of $450 per month to the Trustee. *Id*. The Debtor's first payment was made in October 2019. Mem. in Supp., Doc. 131 at 7.

In 2021, the Movant hired Mr. Neal Howard to represent him in his professional liability suit. Howard filed the Movant's professional liability claim in the Superior Court of Muscogee County on December 3, 2021. *Id*. at 3. Superior Court backlogs and judicial turnover led to slow administration of the case which was assigned to its current judge as late as July 1, 2024. *Id*. at 4.

On April 27, 2022, the Debtor amended his Schedule F to include the Movant and provided notice to the Movant's attorney. Am. Schedule F, Doc. 61. The Movant, represented in the Debtor's bankruptcy case by Mr. Fife Whiteside, promptly moved the Court to extend time to file proof of claim and did so expeditiously. Mot. to Extended Time, Doc. 70. The Movant then moved for relief from the automatic stay retroactively to continue the professional liability case in Superior Court which the Court granted on February 17, 2023. Mot. for Relief, Doc 77; Consent Order Grant'g Mot.; Doc. 82.

In June 2024, the Debtor's case had reached 57 months, the completion window for the plan. Mem. in Supp., Doc. 131 at 7.  The Trustee objected to the Movant's proof of claim on July 12, 2024, stating that the claim was still contingent and unliquidated to resolve the claim to enter his report. Obj. to Claim 18; Doc. 89. The Movant, the Debtor, and the Trustee submitted a consent order allowing the case to remain open for nine months to resolve the underlying professional liability case which the Court entered on October 11, 2024. Consent Order; Doc. 99. The Movant requested three additional months in June 2025 which the Court approved in July 2025. Mot. for Court Direction; Doc 103; Order Grant'g Mot., Doc 106.

Activity continued in the professional liability case. On September 11, 2024, the Superior Court entered a case management order setting the deadline to complete mediation for January 15, 2025. *Id*. at 8. The Movant passed away on December 9, 2024, and his Estate was substituted as Plaintiff in his professional liability suit. *Id*. at 8-9.

3

In the Debtor's bankruptcy case, the Trustee filed his report on November 10, 2025, that the Debtor completed his payments under the plan. Chapter 13 Trustee Report, Doc. 112. The Movant filed a notice with no opposition to the discharge. Resp. with No Opp, Doc. 123. The discharge order was entered on January 5, 2026. Order Discharg'g Debtor, Doc. 127.

Again, activity continued in the product liability case, some of which the Movant characterizes as a malicious litigation strategy by the Debtor's insurer that included delays "to make keeping the bankruptcy case open difficult." Mem. in Supp., Doc. 131 at 10. The professional liability case is currently set for trial on September 14, 2026. *Id.*

The Movant contends that the disposition of the product liability case is essential to the termination of the bankruptcy case. *Id.* at 8. If the judgement in the professional liability case exceeds the policy limits on the Debtor's professional malpractice policy, the Debtor would have a potential bad faith claim against his insurance company under Georgia law. *Id.* The Movant wants the case to remain open to administer that potential asset for the benefit of unsecured creditors which include the Movant. *Id.* On October 24, 2025, with the professional liability case still not having been resolved, the Movant filed a motion again to request the case remain open to accommodate the trial of the professional liability case. Mot. for Court Direction, Doc. 109. The Debtor filed opposition to the Movant's request on November 10, 2025. Resp. with Opp'n, Doc. 113. After continuing the hearing on the matter multiple times, in March 2026, parties requested 120 days during which to submit briefs. Order Scheduling Oral Arg., Doc 129. After briefs were submitted, the Court heard the parties' arguments on July 20, 2026, and took the matter under advisement. Hr'g Held, Doc. 135.

## II.   LEGAL ANALYSIS

The parties disagree as to whether the Court can or should hold open the Debtor's bankruptcy case to accommodate a potential recovery from a bad faith insurance claim that is not currently ripe. This Court finds § 1329 prohibits the Court from allowing a modification beyond the five-year commitment period of the plan. The parties also disagreed as to whether the potential bad faith claim would be property of the estate under § 541. This Court finds that its findings about the limits of the Court's jurisdiction under § 1329 are dispositive to this matter, so only that argument will be addressed.

The question presented to the Court is whether relief is available to the Movant if the Debtor's bankruptcy case remains open. Relief, the parties contend, would come from a plan modification under § 1329 that distributes the proceeds from the bad faith claim to the Debtor's unsecured creditors. This Court finds that the plain language of § 1329(c) does not permit modification of the Debtor's plan, nor can the Trustee administer the unmatured asset because it would necessarily require payment beyond the five-year commitment period. The Court also finds that relief cannot otherwise be granted. Section 105(a) does not permit the Court to exercise power prohibited by the Bankruptcy Code. Because the Trustee cannot administer future assets in this Debtor's bankruptcy case, closure of the case is appropriate.

Section 1329 allows parties to modify a previously confirmed plan with limitations. One of those limitations is in § 1329(c), which states:

> A plan modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but *the court may not approve a period that expires after five years after such time.*

11 U.S.C. § 1329(c) (emphasis added).

The parties do not disagree that five years have passed since the first payment was due under the original plan. The Movant argues that the Court can administer an estate asset after the five-year commitment period of a Chapter 13 plan has expired. The Debtor disagrees. Therefore, the Court must determine whether the Code's prohibition of extending the plan beyond five years bars the administration of a single asset after the commitment period has expired. This Court finds that it does.

This Court is persuaded by the reasoning in *In re Macon* which concluded that § 1329(c) creates a blanket prohibition against extending modification beyond five years with no exceptions. 669 B.R. 626, 661-62 (Bankr. S.D. Ga. 2025) (citing *In re Goldston*, 627 B.R. 841, 854 (Bankr. D.S.C. 2021) and *In re Scarver*, 555 B.R. 822, 827 (Bankr. M.D. Ala. 2016)). The *Macon* court looked at the plain language of the statute and found Congress does not authorize bankruptcy courts to extend cases beyond the temporal restriction of § 1329(c).[1] This Court agrees that the plain language of the statute does not allow the Court to confirm a plan with payments scheduled beyond five years. Since the Court cannot modify the Debtor's plan to administer the potential bad faith insurance claim, keeping the case open to do so would be inappropriate.

The *Macon* court, to support its reading of the plain language, found that, in enacting the five-year restriction of plans, Congress sought to avoid burdening debtors with cases that continue for an unlimited amount of time. 669 B.R. 626, 661-64. The *Macon* court quoted the legislative history which, in instituting this maximum time period for plans, extending cases for

---

[1] In the Coronavirus Aid, Relief, and Economic Security Act, known as the "CARES Act," Congress inserted a paragraph 1329(d) to the Bankruptcy Code which allowed debtors that had filed Chapter 13 plans confirmed prior to March 27, 2020, to extend their cases for a seven-year period if they had experienced financial hardship due to the COVID-19 pandemic. Pub. L. No. 116-136, 134 Stat. 281 (2020). The Debtor would have been eligible for this relief but did not move the Court for such a modification. This provision has since expired.

seven to ten years "has become the closest thing there is to indentured servitude; it lasts for an [un]indentifiable period and does not provide the relief and fresh start for the debtor that is the essence of modern bankruptcy law." *Id*. at 663 (*quoting* H. R. Rep. No. 95-595, at 117). While the plain language of the statute is dispositive in this matter, the legislative history informs the Court's understanding of the underlying spirit of the Bankruptcy Code. Congress's prohibition against plans continuing beyond the five-year period is meant to provide debtors with the fresh start essential to the bankruptcy system.

The Movant argues the *Macon* case is distinguishable to the case at bar because the claim in that case accrued after the case was closed. This inquiry is relevant to the question of whether the claim is part of the bankruptcy estate under § 541 and does not affect the five-year time restriction under § 1329(c). Section 1329 does not provide any differing treatment or exceptions for claims that accrued before or after the case has closed.

The Movant then argues that the Court should instead follow the reasoning established in *In re Lugo*, No. 18BK18603, 2020 WL 1817853 (Bankr. N.D. Ill. Mar. 12, 2020). The facts are distinguishable in *Lugo* and this Court is not otherwise persuaded by its reasoning. The Debtors in *Lugo* objected to a modified plan that required them to turn over proceeds from a postpetition car accident. *Lugo* at *2. The Debtors did not object to the provisions modified in the plan, which included increasing the dividend to unsecured creditors, but objected to turning over any funds that were received after the five-year period of the plan. *Id.* Most importantly, the underlying modified plan did not schedule payments to be made beyond five years. *Id*. Instead, payments and a potential default would accrue over the five-year commitment period, and the after-acquired funds could cure that default after the five years expired. *Id*. The *Lugo* court characterized the remittance of the proceeds as debtors' obligation to remit funds as the duty to

7

turnover estate property under § 542, which could cure a potential default in payments. The *Lugo* court did not find that this would schedule an additional plan payment which would be barred under § 1329(c). *Id*. In this case, any modification of the plan to account for future after-acquired estate proceeds would necessarily be scheduled beyond the five-year restriction imposed by § 1329(c) because that period has already expired. *Id*. Thus, modification would be inappropriate at this time.

The Movant cites the case *HomeQ Servicing Corp. v. Hauf*, No. 4:06CV83 CDL, 2007 WL 196857 (M.D. Ga. Jan. 23, 2007) in which the district court affirmed this Court's decision about a similar issue. In that case, the district court affirmed the bankruptcy court's finding that a Trustee could administer an asset without the modification of the plan. This ruling is distinguishable from the case at bar.

First, the debtors in *Hauf* consented to the extension confirming that the debtors did not feel burdened by the continued administration of their case. *Hauf* at *3. The Court would not be as troubled by the Debtor's case remaining open had the Debtor consented to this treatment. The *Hauf* court also decided that modification was not necessary to administer the contested asset because of the bankruptcy courts powers under § 105(a). *Hauf* at *5. Because the plan was not modified, it did not schedule any payments beyond the five-year restriction. The court did not address § 1329(c) in its ruling. Instead, the court granted the Trustee the power to administer the asset and disburse the proceeds to the unsecured creditors without requiring a modification. *Hauf* at *4.

This Court is persuaded by subsequent case law on this issue where courts have found that § 1326(a)(2) binds the Trustee to make payments "as confirmed" and a modification would be necessary to administer an after-acquired asset. *In re Leahey*, No. 11-11906-ABA, 2017 WL

8

4286136, at *3 (Bankr. D.N.J. Sept. 26, 2017) (finding that an asset cannot be distributed without a modification where the confirmed plan allowed for a zero percent distribution to unsecured creditors). In this case, this Court finds that modification would be necessary to increase the dividend to unsecured creditors which, in the Debtor's confirmed plan, is currently a dividend of one hundred dollars. Therefore, the provisions of § 1329 would apply to the modification in this case, including the five-year temporal restriction in § 1329(c).

Finally, the Movant argues that § 105(a) empowers the Court to exercise its equitable powers to prevent a windfall for the Debtor. While the Court sympathizes with the Movant, the Court cannot enlarge its powers granted under § 105(a). The Supreme Court has said:

> It is hornbook law that § 105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code." 2 Collier on Bankruptcy ¶ 105.01[2], p. 105–6 (16th ed. 2013). Section 105(a) confers authority to "carry out" the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits. That is simply an application of the axiom that a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere.

*Law v. Siegel*, 571 U.S. 415, 421 (2014). Section 1329(c) expressly prohibits the modification of plans beyond five years. Congress did not grant bankruptcy courts the authority or discretion to confirm the modification of a plan beyond that period. The Court cannot use § 105(a) to ignore the Code's explicit provision.

The Court, however, will address the Movant's argument that prohibiting the modification of the Debtor's plan beyond five years would lead to an unfair windfall to the Debtor and be inconsistent with established bankruptcy principles. *See also Lugo* at *3. This narrow interpretation of the established bankruptcy principles fails to account for the Debtor's right to a fresh start at the completion of his plan. The provisions of the Bankruptcy Code are sufficiently rigid as to generally protect creditors. The conduct about which the Movant

complains generally accuses the insurance company of wrongful misconduct, not the Debtor. While the Debtor failed to list the Movant as creditor on his initial schedules, he amended the schedules and did not object to additional time for the Movant to file a proof of claim. The allegations of malicious delays in the professional liability case are directed at the Debtor's insurer, not the Debtor himself. To burden a Debtor who has otherwise completed his payments with the continued administration of his bankruptcy case for the potential for the Movant to recover from the Debtor's insurance company infringes on the Debtor's right to the fresh start as promised by the Bankruptcy Code. It is, therefore, not appropriate for the Court to keep his case open for the benefit of the Movant.

Finally, the Movant questions why the Debtor will not consent to the continued administration of his case. The time for depositions and evidence has passed. The Court, therefore, will not speculate as to the Debtor's motive nor does the outcome of the case depend on the understanding of his position.

### III.    CONCLUSION

For the aforementioned reasons, the Court **DENIES** the Movant's motion. The Court will enter an order accordingly.

END OF DOCUMENT